## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOEL DIAZ,<br>　　　*Plaintiff*,<br><br>　　　　v.<br><br>HANNA, *et al.*,<br>　　　*Defendants.* | No. 3:20-cv-1050 (VAB) |

## INITIAL REVIEW ORDER AND RULING ON MOTIONS

Noel Diaz ("Plaintiff"), *pro se* and currently incarcerated at the Northern Correctional

Institution in Somers, Connecticut, has filed a Complaint under 42 U.S.C. § 1983 against

Warden Hanna, Deputy Warden John Doe, Counselor Supervisor John Doe, Counselor Biga,

Counselor Cristaldi, AP Officer[1] John Doe, Captain Hurdle, and Supervisory Counselor Jane

Doe (collectively, "Defendants") for failing to provide him a mattress sufficient to meet his

medical needs.[2] Compl., ECF No. 1 (July 24, 2020). Mr. Diaz's Complaint seeks damages and

injunctive relief.

Mr. Diaz has filed a motion requesting PACER information. Mot. to Request PACER

Info., ECF No. 7 (July 27, 2020) ("Mot. for PACER Info.").

Mr. Diaz has also filed a motion seeking injunctive relief and has amended that motion

once. Mot. for Order to Show Cause for Preliminary Injunction and Temporary Restraining

Order, ECF No. 8 (Aug. 5, 2020) ("Mot. for PI."); Amended Mot. for Order to Show Cause for

Preliminary Injunction and Temporary Restraining Order, ECF No. 10 (Aug. 5, 2020) ("Am.

---

[1] AP Officer Doe is elsewhere referred to as a "Property Officer." *See* Compl. at 3.
[2] On October 16, 2020, Mr. Diaz paid the filing fee required for the action to proceed. Notice, ECF No. 21 (Oct. 16, 2020).

Mot. for PI.").

For the following reasons, the claims against Warden Hanna, Deputy Warden John Doe, Counselor Supervisors John and Jane Doe, and Grievance Counselor Cristaldi and the requests for injunctive relief are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The case will proceed on the claim for unconstitutional conditions of confinement and deliberate indifference to medical needs against AP Officer John Doe, Captain Hurdle, and Counselor Biga in their individual capacities.

Mr. Diaz's motion for preliminary injunctive relief [**ECF No. 8**] and amended motion for preliminary injunctive relief [**ECF No. 10**] are **DENIED**.

Mr. Diaz's motion seeking PACER information [**ECF No. 7**] is **DENIED** without prejudice to renewal, as Mr. Diaz fails to indicate what information he seeks and does not explain why he cannot obtain the information through the discovery process.[3]

## I.      BACKGROUND

On March 4, 2020, Mr. Diaz allegedly was transferred to Garner Correctional Institutional ("Garner") "to begin the second phase of the Administrative Segregation Program." Compl. ¶ 1. Mr. Diaz alleges that he has a "history of medical conditions" that include "ongoing knee issues and shoulder issues" and "severe pain in [his] back and . . . neck." *Id*. He alleges that these issues cause him to "not be[] able to sleep due to waking up in extreme pain throughout the night." *Id*. ¶ 2.

On March 7, 2020, Mr. Diaz allegedly filed an inmate request form noting that the mattress he had been provided upon his arrival at Garner was "very old and caus[ing] [his]

---

[3] In full, the motion reads: "I[,] Plaintif[f] Noel Diaz[,] request PACER information of all and each Defendants listed in [this] case. I have been denied PACER information by Defendants['] employers['] contracted Legal Assistance Program." Mot. for PACER Info.

medical symptoms to worsen." *Id.* at 13; *see also id.* ¶ 3.

On April 7, 2020, Mr. Diaz allegedly filed an inmate request form, submitted to the AP Officer, noting that he had not "received any response about . . . getting a new mattress," explaining that "this one is old and makes my medical symptoms . . . worsen." *Id.* at 14.

On April 29, 2020, Mr. Diaz allegedly filed an inmate request form submitted to Counselor Biga, stating that he needed a new mattress because "[he] can't sleep" and was "in pain." *Id.* at 15.

On May 15, 2020, Mr. Diaz allegedly filed an inmate request form, submitted to the AP Officer, noting that he had filed "two request[s] already" without response. *Id.* at 16. Mr. Diaz stated that his mattress was "worn, old and broken" and that he was "practically sleeping on steel," which was causing pain to his joints. *Id.*

On May 17, 2020, Mr. Diaz allegedly filed an inmate administrative remedy form, submitted to the Grievance Counselor, detailing the history of his requests for a new mattress and again explaining that he had "lost many hours of sleep due to the worsening of [his] symptoms . . . which are medically documented." *Id.* at 21.

On May 20, 2020, Mr. Diaz allegedly filed an inmate request form, submitted to Captain Hurdle, noting he was "still waiting" on a mattress and again that he could not sleep because of the pain. *Id.* at 17.

On June 6, 2020, Mr. Diaz allegedly filed an inmate request form, submitted to the Grievance Counselor, stating that he had not received a receipt number after filing his May 17, 2020 administrative request and grievance. *Id.* at 18.

On July 14, 2020, Mr. Diaz allegedly filed a Level 1 to Level 2 inmate grievance appeal form, arguing that "the time ha[d] run out on the grievance" and that he had sent written

notification of a lack of response. *Id.* at 22. He requested "a new mattress plus two additional mattresses for my weight," as well as a receipt for the grievance." *Id.*

On July 20, 2020, Mr. Diaz allegedly received a memo from Grievance Counselor Cristaldi stating that he was not processing Mr. Diaz's Level 2 appeal because there was no record of a Level 1 grievance being filed. *Id.* ¶ 5, *see also id.* at 23.

On July 22, 2020, Mr. Diaz allegedly filed a Level 2 to Level 3 inmate grievance appeal form, arguing that he had filed all the relevant documents and "followed the proper guidelines to exhaust [his] administrative remedies." *Id.* at 23; *see also id.* ¶ 5.

## II.   STANDARD OF REVIEW

### A.   Initial Review

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon

which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### B.    Preliminary Injunctive Relief

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citing *Moore v. Consol. Edison*

*Co.*, 409 F.3d 506, 510 (2d Cir. 2005)). "That is because the preliminary injunction is one of the most drastic tools in the arsenal of judicial remedies." *Id.* (internal quotation marks omitted).

To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted). The Supreme Court has repeatedly stated that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citations omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citation omitted).

"[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.*, the situation that existed between the parties immediately prior to the events that precipitated the dispute." *Asa v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010); *Transamerica Rental Finance Corp. v. Rental Experts*, 790 F. Supp. 378, 381 (D. Conn. 1992) ("It is well established in this Circuit that the purpose of a preliminary injunction is to preserve the *status quo* between two parties."). "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *North Am. Soccer League, LLC v.*

*United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quoting *N.Y. Civ. Libs. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

"The district court has wide discretion in determining whether to grant a preliminary injunction." *Moore*, 409 F.3d at 511. "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)).

## III.   DISCUSSION

Mr. Diaz argues that Defendants committed constitutional violations by failing to provide him a new mattress upon his arrival at Garner. *Id.* at 10. He seeks relief in the form of a new mattress, plus two additional mattresses, Copper Fit sleeves and icy hot packs for pain relief, as well as punitive and compensatory damages from all Defendants. *Id.* at 9. He argues that this constitutes deliberate indifference to his medical needs under the Eighth Amendment.[4]

Mr. Diaz also asserts a claim for denial of due process and interference with his right to petition the government for redress of grievances against Grievance Counselor Cristaldi for failing to process his grievances.

### A.   The Eighth Amendment Claim

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429

---

[4] Department of Correction records show that Mr. Diaz was sentenced on October 11, 2018. *See* Inmate Info, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=426056 (last visited Oct. 19, 2020). His claims therefore arise under the Eighth, rather than the Fourteenth, Amendment. *See Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while claims of pretrial detainees are considered under the Fourteenth Amendment).

U.S. 97, 104 (1976) (internal quotation marks and citation omitted). "[T]his is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

To state an Eighth Amendment claim for unconstitutional conditions of confinement or deliberate indifference to health, a plaintiff must allege facts supporting an objective element, that "the deprivation that [he] suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities," and a subjective element, that the defendant "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and alteration omitted)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that the standard has both objective and subjective components).

Under the objective prong, the inmate's medical need or condition must be "a serious one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). Rather, the Court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily

activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

Under the subjective prong, Mr. Diaz must allege that Defendants were actually aware of a substantial risk that he would suffer serious harm as a result of their actions or inactions and disregarded that risk by failing to take corrective action. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see also Farmer*, 511 U.S. at 834 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and … dr[e]w that inference"). Mere negligent conduct does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d. at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Mr. Diaz argues that Defendants' alleged "willful failure to provide [him] with a mattress with the proper . . . material" amounts to deliberate indifference and unconstitutional conditions of confinement. *See* Compl. at 9-10. Under the objective prong, Mr. Diaz must set forth facts showing that his existing mattress "pose[s] an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (setting forth objective standard applied under both the Eighth and Fourteenth Amendments) (quoting *Walker*, 717 F.3d at 125) (internal quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and

duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are considered in combination where one combines with another to affect one identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").

Mr. Diaz challenges one condition, his mattress, which he argues causes increased pain and interferes with his ability to sleep. Compl. ¶¶ 1-9. Courts in this Circuit have concluded that "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker*, 717 F.3d at 126. Accordingly, "[t]he condition of . . . [an] inmate's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Id.* (internal quotation marks omitted). "To succeed on a claim involving an alleged deficient bed, a plaintiff must allege that [he] had a medical condition requiring a non-standard bed to protect against serious damage to his future health or that the medical condition was itself created by an inadequate bed or mattress." *Jones v. City of New York*, No. 18-cv-1937(VSB), 2020 WL 1644009, at *7, 9 (S.D.N.Y. Apr. 2, 2020) (quoting *Rivera v. Doe*, No. 16-cv-8809 (PAE) (BCM), 2018 WL 1449538, at *7 (S.D.N.Y. Feb. 26, 2018)) (internal quotation marks omitted) (finding plaintiff had satisfied the objective prong where plaintiff alleged that his spinal impairment was "exacerbated by sleeping and sitting on the 'worn[-]down,' 'one inch in thickness' mattress he was issued").

Mr. Diaz has alleged that he has a series of medical conditions, including spinal, back and neck injuries, which require a non-standard bed. Compl. ¶¶ 1-10. The Court finds these allegations sufficient to demonstrate that his condition was "sufficiently serious," *Brock*, 315 F.3d at 162-63, and "that a non-standard bed was required to avoid or mitigate the pain alleged

but was not provided to him," *Jones*, 2020 WL 1644009, at *8. Accordingly, for purposes of initial review, Mr. Diaz has satisfied the objective prong.

Under the subjective prong, Mr. Diaz alleges that various Defendants were aware of the inadequacy of his mattress, given his medical conditions, and failed to act on his requests. Compl. ¶¶ 8-10; *id.* at 10. Specifically, Mr. Diaz alleges that John Doe (the AP Officer) assigned him his mattress and failed to provide him a new one, and that Captain Hurdle and Counselor Biga were the officers in charge of his housing unit with the authority to order or provide a new mattress. Compl. at 10. Mr. Diaz provides multiple inmate request forms in support of his claim, *see id.* at 13-22, which he alleges put officials on notice of his medical conditions and his need for a new mattress, *see id.* ¶ 8-10.

Accordingly, Mr. Diaz's allegations, construed liberally, satisfy the subjective prong with respect to AP Officer John Doe, Captain Hurdle, and Counselor Biga. The Court therefore will permit Mr. Diaz's Eighth Amendment deliberate indifference claim to proceed against these Defendants at this time.

Mr. Diaz also names Warden Hanna, the deputy warden and two counselor supervisors in this claim. *See* Compl. at 10. All four are supervisory officials, and Mr. Diaz does not claim that the Warden, the deputy warden or the counselor supervisors acted in anything other than their supervisory capacities with respect to his requests for a new mattress. Any claims against these defendants based only on their positions as supervisory officials are not cognizable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

Instead, to state a cognizable claim that the Warden, the deputy warden, or the counselor supervisors are liable for any alleged constitutional violations pertaining to his mattress requests,

Mr. Diaz must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (alteration in original) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Mr. Diaz challenges only the failure to comply with his request for a new mattress. He does not challenge any institutional policy, nor does he allege any facts suggesting that he directly informed any of the supervisory defendants of his requests. This is insufficient to plausibly state a claim for supervisory liability.

Accordingly, all Eighth Amendment claims against Warden Hanna, deputy warden John Doe, and counselor supervisors John and Jane Doe will be dismissed under 28 U.S.C. § 1915A(b)(1).

## B.    Due Process/Right to Petition for Redress of Grievances

Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (finding that due process claim relating to access to prison grievance procedures "confused a state-created procedural entitlement with a constitutional right," as "neither state policies nor 'state statutes … create federally protected due process entitlements to specific state-mandated procedures'" (alteration in original) (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003))).

But Mr. Diaz alleges that Grievance Counselor Cristaldi denied him due process by

12

failing to respond to his grievances in a timely manner, as well as "ignor[ing]" and "block[ing]" his requests. Compl. at 10. Mr. Diaz also alleges that Grievance Counselor Cristaldi violated his right to petition the government for redress of grievances in violation of the First Amendment. *Id.*

Accordingly, because Mr. Diaz has no constitutionally protected right to receive a response to his grievance requests, the Court will dismiss his due process claim against Grievance Counselor Cristaldi under 28 U.S.C. § 1915A(b)(1).

Mr. Diaz also argues that, by failing to respond to his grievance, Grievance Counselor Cristaldi violated his right to petition the government for redress of grievances under the First Amendment. Compl. at 10.

The Supreme Court requires that inmates exhaust available administrative remedies before filing a lawsuit in federal court. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). If administrative remedies are not available, however, the inmate may proceed accordingly. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (an inmate's failure to exhaust administrative remedies is excusable if the remedies are in fact unavailable). There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. An administrative procedure is unavailable where (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

Here, if Defendants raise exhaustion of administrative remedies as an affirmative defense in their Eighth Amendment claim, Mr. Diaz can argue that these remedies were, in fact,

unavailable under this standard. If the Court then finds that remedies were unavailable, Mr. Diaz

can, accordingly, proceed with this action. Mr. Diaz therefore has not been deprived of his right

to petition the government for redress of grievances.[5]

Accordingly, the claims against Grievance Counselor Cristaldi will be dismissed under

28 U.S.C. § 1915A(b)(1).

### C.    Injunctive Relief

In his Complaint, Mr. Diaz seeks injunctive relief in the form of three mattresses, Copper

Fit sleeves, and icy hot packs. Compl. at 10.

In his initial and amended motions for injunctive relief, Mr. Diaz seeks various forms of

relief, including four state-issued mattresses, the right to purchase a typewriter, return of property

allegedly seized from him, a neck cushion, mandatory chiropractic appointments, an order that

Defendants and their agents remain fifty feet away from him at all times, and release from the

Administrative Segregation Program. Am. Mot. for PI at 1-2.

Given the requirement for an award of preliminary injunctive relief that a plaintiff must

demonstrate a likelihood of success on the merits of his claims, it follows that a request for

preliminary injunctive relief must relate to those claims. *See De Beers Consol. Mines Ltd. v.*

*United States*, 325 U.S. 212, 220 (1945) (finding injunctive relief was appropriate where it

pertained to "the same character as that which may be granted finally," but inappropriate where

the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Torres v.*

*UConn Health*, No. 3:17-cv-325(SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017)

(finding preliminary injunctive relief unwarranted where the claim in the motion for injunctive

---

[5] To the extent Mr. Diaz's claim against Grievance Counselor Cristaldi is directed at any inability to utilize the prisoner grievance procedure, that claim is dismissed for the same reasons as his due process claim.

relief was unrelated to claims in the complaint). Mr. Diaz only alleges a failure to provide him an adequate mattress or set of mattresses.

Accordingly, all requests for injunctive relief other than those seeking multiple mattresses will be dismissed as unrelated to the Complaint's claims.

Moreover, "in [the Second] [C]ircuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin*, 467 F.3d at 272. On September 2, 2020, Mr. Diaz filed a notice of change of address indicating that he is now confined at the Northern Correctional Institution. Notice, ECF No. 14 (Sept. 2, 2020).

Accordingly, as Mr. Diaz is no longer confined at Garner, his requests for injunctive relief pertaining to conditions at Garner will be denied as moot.

To the extent Mr. Diaz's claims pertain in substance to the conditions of confinement at his new facility, the Court cannot apply these requests to the circumstances of his confinement or personnel there. *See In re Rationis Entm't Inc. of Pan.*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction."); *Lapierre v. Lavalley*, 9:15-cv-1499 (MAD/DJS), 2016 WL 4442799, at *3 (N.D.N.Y. Aug. 23, 2016) (quoting *In re Rationis Enters., Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001)) (finding that a plaintiff could not seek injunctive relief over correctional staff at prison to which he had been transferred, as they were not defendants in the case, nor over staff at his former facility, because transfer mooted request for injunctive relief); *Oliphant v. Villano*, No. 3:09-cv-862, 2010 WL 5069879, at *2 (D. Conn. Dec. 3, 2010) ("the Court lacks jurisdiction to enjoin the conduct of prison mental health, medical and correctional staff who are not defendants in this action").

Accordingly, the Court will deny Mr. Diaz's requests for injunctive relief in the Complaint, the Motion for Preliminary Injunction, and the Amended Motion for Preliminary Injunction.

## IV.   CONCLUSION

The claims against Defendants Hanna, Deputy Warden John Doe, Counselor Supervisor John Doe, Supervisory Counselor Jane Doe, and Grievance Counselor Cristaldi and the requests for injunctive relief are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The case will proceed on the claim for unconstitutional conditions of confinement and deliberate indifference to health against Defendants AP Officer John Doe, Captain Hurdle, and Counselor Biga in their individual capacities.

Mr. Diaz's motion for preliminary injunctive relief [**ECF No. 8**] and amended motion for preliminary injunctive relief [**ECF No. 10**] are **DENIED**.

Mr. Diaz's motion seeking PACER information [**ECF No. 7**] is **DENIED** without prejudice to renewal, as Mr. Diaz fails to indicate what information he seeks and does not explain why he cannot obtain the information through the discovery process.

The Court enters the following additional orders:

(1)     As Mr. Diaz paid the filing fee to commence this action, he is responsible for effecting service on defendants Captain Hurdle, Counselor Biga, and AP Officer Doe in their individual capacities. Mr. Diaz is directed to do so by **January 8, 2021** and to file a completed return of service, *i.e*., a completed waiver of service of summons form or server's affidavit, by **January 20, 2021**. Failure to do so will result in the dismissal of this case without further notice from the Court.

(2)     T**he Clerk of Court shall** send Mr. Diaz a copy of this Order.

(3)     **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **February 26, 2021**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **July 30, 2021**. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by **September 24, 2021**.

(7)     Under D. Conn. L. Civ. R. 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days from the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If Mr. Diaz changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Diaz must give notice of a new address even if he is incarcerated. Mr. Diaz should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Diaz has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Diaz should also notify Defendants or the attorney for Defendants of his new address.

(9)     Mr. Diaz shall utilize the Prisoner E-filing Program (the "Program") when filing documents with the Court. Mr. Diaz is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with

17

the Court, discovery requests must be served on Defendants' counsel by regular mail.

(10)   The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Mr. Diaz.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of November, 2020.

/s/Victor A. Bolden
 Victor A. Bolden
United States District Judge